First case, please make your appearance, counsel, and proceed. Good morning, justices. May it please the court, counsel, and my name is T. Laura Louie, and I am the attorney for the petitioner in this case, Raul Mariscal-Ortiz. Now, there are four points that I would like to address the court this morning, but given that I only have 15 minutes, the reality is I will probably only get to one. If I'm lucky, two. But I'd like to bring those four points up to the court. The first one is that this court should not give any deference to Chevron. And the reason is because the United States Supreme Court has already addressed the I apologize. And therefore, there's no need to defer to the Board of Immigration Appeals or the Department of Homeland Security in this case. Because the statute in question, which is namely 18 U.S.C. 16, has been decided by the U.S. Supreme Court, so it is not ambiguous. Well, I might as well jump in and stop your cadence right now. By the United States Supreme Court, you're talking about the Borden case? Correct, Your Honor. And why is Borden relevant? It's an ACCA case. What does that have to do with this? Your Honor, thank you for your question. That actually leads to my second point of why Borden is relevant to the issue here. It is an ACCA case. That is true. But Borden analyzed 18 U.S.C. subsection 16, which is the definition of a crime of violence. And when you're talking about a found in the Immigration and Nationality Act, it's found in 8 U.S.C. section 1227, subsection 8, subsection AE8, which talks about the domestic violence ground of removability. And the very definition in that statute is that it has to be a crime of violence. So although Borden dealt with ACCA, the court in Borden gave us what does not constitute a crime of violence under 18 U.S.C. section 16. And let me follow you. Are you saying that the same definition for crime of violence that is operative in Borden is operative here? Yes, Your Honor. Because when you look at the section that contains the definition of a domestic violence ground of removability, that is the overall umbrella found in 1227. Then under that umbrella, there are four different subsections. One subsection has to do with domestic violence. One subsection has to do with child abuse, neglect, or abandonment. One section has to do with stalking. And then the fourth subset has to do with a violation of a protective order. And aren't we dealing with the second subsection here? We are, but the underlying definition of a domestic violence ground. So we have the general umbrella definition of domestic violence, and that is section 16, in which Borden, the U.S. Supreme Court, took the crime of violence definition and held that recklessness mens rea does not equate to a crime of violence. But doesn't the federal definition of the child abuse, child neglect, child abandonment statute here, as interpreted by Madda, Velazquez, and Zarate, include recklessness? It does, Your Honor, and that's the respondent's position is this court should give deference to Velazquez, Herrera, and other cases from the board. Is it really a matter of giving deference? I mean, the statute itself doesn't define, does it, crime of child abuse, child neglect, or child abandonment. The definition's been fleshed out in these other cases. Are you saying that that's the wrong federal definition? That is our position, Your Honor. Where do we find the federal definition? Our position is that you find the federal definition under the Federal Child Abuse and Treatment Act, which does define what child abuse is on a federal level to constitute a federal crime. But then our position is that Borden, when it rendered the decision, when the meant to encompass all the four subsets, when the Supreme Court in Borden says and held recklessness mens rea does not constitute a crime of violence. Well, that's because 16 doesn't even have a mens. They had to interpret what mens rea was, but here we have authority that says reckless is part of this crime. We have authority from the Board of Immigration of Appeals. Our position is, now we have... Well, we have authority from Zarate, too, don't we? That's this court. That's this court. That's true. We have authority from the Board of Immigration Appeals. We have some circuit courts, not only out of this court, but we do have some out of the Fourth Circuit, Sixth Circuit as well. But now we have intervening U.S. Supreme Court case law that has defined the issue of recklessness, and that is the issue before this court. It is whether a recklessness mens rea constitutes a crime of violence such that the subset under 16A, crime of violence, can render someone removable. And our position is the U.S. Supreme Court has therefore, it is not an ambiguous statute, and Chevron does not apply. Let me articulate what I see to be a problem with the argument. Even assuming that I accepted your position that Borden, in some way, is apposite here. In other words, it is relevant. Zarate specifically included recklessness in the definition as it relates to the matter that is particularly before us now. And our case law sets a pretty high bar for us to view our own precedent as being abrogated. And so what you've got is you've got this Borden case that dealt with a different statute, different regime, articulating what a crime of violence is. There's a pretty high threshold for mapping that onto this situation. And in fact, I'm struggling to see how one could do it. And so what I'm asking you is, in light of the fact that we would have to take the premise, I think, based upon what you're saying, that Borden abrogates the portion, at least, of Zarate that says that recklessness is included in the mens rea. What would be the Well, I think this Utah statute that was in effect when the petitioner was convicted, Your Honor, would be the best scenario. Because under Utah statute at that time, it held that physical injury means an injury to or condition of a child which impairs the physical condition of a child, including any other condition which imperils the child's health or welfare, and which is not a serious physical injury. I think under Leocal, under Borden, under Descamps, even under this court's decision in We're asking the court to follow Borden, notwithstanding this court's decision in Zarate. And I'm sorry I asked you, I tried to articulate what I viewed as being the problem with that, which is that you have one entire regime of law, Borden, Descamps, all of those cases come out of a certain area, and most of them involving the ACCA or the analog statutes. And what basis do we have to abrogate, which is I think what you're saying, that's what we'd have to do, right? You're saying that, what basis would we have to say that those cases are so closely related to this case that we can clearly say that Zarate is no longer good law? I guess what I'm saying is, what case can you point to where we have done a similar thing? That's what I'm getting at. Because that's what you'd be asking us to do, is point, look at Borden and say, okay, well Borden renders Zarate, our own case, bad law. My answer to this probably is going to be memorialized for many years, but essentially that's what we're asking this court to do. We're asking this court to follow Borden and reverse its decision on Zarate. When you started your reference to the Utah statute, we're really comparing the scope of the Utah statute to the scope of the federal statute, correct? We're doing a categorical analysis? Yes. Okay, and the part of the statute you pointed to dealt more with the conduct that it covers, not so much the mens rea. So it seems to me your Borden argument goes to this question of recklessness, but the part of the statute you talked about wasn't about that. It was more about the scope of the conduct that the statute covers. And so that leads me to this question, which is whether the Utah statute, including the part that you quoted about imperiling a child's health or welfare, does the Utah statute require physical injury? And that's my third point, Your Honor, is that the Utah statute is overly broad. It doesn't require physical injury, whereas the federal definition of child abuse and neglect that's codified in 42 U.S. CIA, section 5016G, which is the Federal Child Abuse and Prevention Treatment Act, it states, any recent act or failure to act on the part of a parent or caretaker resulting in serious physical injury, serious physical or emotional harm, sexual abuse or exploitation, or an act or failure to act which presents an imminent risk of serious harm. Well, I'd like to get back to the Utah statute. Yes. And it says, it defines physical injury, and it includes these four subsections, including the one you quoted, but it's all one sentence, and it says physical injury means. So my question is, the part of it that says imperils a child's health or welfare, does that, that doesn't say that that's part of what is physical injury? Not necessarily, Your Honor. It could be, like in our brief... How can you reconcile that with the very first words of the statute? Physical injury means. That's what it says. But it also means, Your Honor, any other condition which imperils a child's health or welfare. Right. It says physical injury means including that. It could, it doesn't necessarily mean physical injury. So it doesn't mean what it says. No, it doesn't. Not in 2016. How do we deal with our decision in Ibarra v. Holder, where we said that this very statute did not appear to criminalize child abuse unless the child was injured? Are we going to have to abrogate that decision, too, to rule to your client? Not in this, no, Your Honor. The court does not need to abrogate Ibarra in this case. You have, you have instances in which conduct doesn't necessarily lead to physical injury, but may result in a child abuse conviction in Utah, not in other states. What are we talking about? Have you got some examples? Yeah, for example, let's say a couple gets... No, no, I mean a real example, a case. Yeah. If you've got a case, can you cite a case, a Utah case? There are not too many Utah cases that deal with conduct other than physical injury. There's, there are instances, but that have not gone to the Utah Supreme Court, in which law enforcement arrives, a partner, partnership are involved in a domestic dispute, law enforcement's called, the children may be inside the home, they may be asleep. But under a Utah statute in existence, when Mr. Marisco was convicted, would have led to him being charged with child abuse for the reason that the children were in there. Well, I guess what I'm trying to, is that actually happened? I mean, isn't that part of determining the scope of the state law? Reason... Yes, Your Honor. Reasonable probability. Has it happened? Yes, it's happened. The government cites a couple of Utah Court of Appeals cases that you don't talk about. Is your failure to refer to those in the briefing waived any reliance on those cases? Provost Sitte and Pete? No, Your Honor. No, Your Honor. Why not? Well, because those are cases like, for example, on the child endangerment, where it was extreme instances where they were, the parents were arrested and charged with child abuse, but they are extreme instances that went all the way to the Utah Supreme Court. There are instances, and there are cases in Utah that do not necessarily reach the Utah Supreme Court, but they are still charged with child abuse, but not under conduct, or not under physical injury, but just conduct. That would, under the statute in existence in 2016. Any other questions? Okay, my time's up. Thank you, Counsel. Good morning, Your Honors, and may it please the Court. My name is Rebecca Nahas, and I'm representing the United States Attorney General. The Court should affirm the agency's conclusion here that Petitioner is statutorily ineligible for cancellation of removal because his Utah child abuse statute categorically constitutes a crime of child abuse, child neglect, or child abandonment. And the Court can affirm this conclusion that the Utah statute categorically qualifies as a crime of child abuse under two theories, depending on how the Court interprets Utah's law. I thought you gave us three in the brief. Well, we gave you three alternatives in terms of the generic definition, but the two theories that the government is proposing is, the first one is that this statute covers actual injury. So the matter of Velasquez-Herrera definition of a crime of child abuse is referring to injurious types of child abuse crimes. And then Matter of Sorum expanded that, or clarified that, and said that it also included non-injurious endangerment crimes. And so starting with sort of the first bucket for injurious crimes, we agree with Your Honor Judge Mathis that this statute, as written, does refer to actual injury. And it would satisfy the Board's generic definition under Matter of Velasquez-Herrera, which requires a reckless act or omission that impairs a child's well-being, whether physical or mental. And the reason is, even though this statute, under subsection 4 of the definition of physical injury, even though it refers to endangerment type of crimes, it's clear when you look at the statutory structure, as well as the two Utah decisions that discuss it, that Utah really does view this actual or real endangerment prong as an injury itself. So even though the child doesn't necessarily suffer any physical harm as a result of the defendant's action, there is still an injury by placing that child in a real situation of endangerment. Well, but to be clear then, the endangerment does not necessarily come with either a physical injury or necessarily a mental injury. The question is simply that Utah, as a matter of law, has defined this as being an injury, right? That's right. I think I am trying to reconcile Provo v. Cannon and Peep, which are the only two decisions that sort of discuss that fourth prong, and the statutory language. And I think you're correct, Your Honor, that Utah is defining physical injury. And I think it's important to point out the definition of physical injury in the statute has a header that reads, an injury to or condition of a child which impairs the physical condition of the child, including. And then it goes on to list four subsections. And I think including qualifies those four subsections. So what that means is the fourth prong is qualified by, it needs to have an injury or a condition that impairs a child's physical well-being. Now, Provo v. Cannon, it's a court of appeals decision out of Utah. They explain that physical, how they put it is that physical injury under this definition may include conditions that are not the result of physical impact. So the impact itself doesn't need to be physical, but ultimately there is going to be an injury because the statute requires that as an element. Well, as a matter of law, then it becomes a physical injury, but it doesn't require physical impact. And also, at least to the extent that we can measure it, it necessarily doesn't require mental impact either, right? I mean, you don't need to have somebody say this person has PTSD to be able to qualify under the statute, right? That's right, Your Honor. Okay, let me just take one thing perhaps off the table. The third alternative in your briefing, which included viewing it as a unitary concept, how does that square with the IBARA? I mean, we can't do that, right? It's a non-starter because IBARA says that you cannot have criminal negligence as being a permissible mens rea. So yes, Your Honor, I'd like to clarify that. That third point was requesting Chevron deference in full as to the board's generic definition of a crime of child abuse, except for negligent endangerment crimes, which this court has already found does not reasonably fall within the generic definition. So we were asking the court as a third alternative to defer in full to the rest of the definition apart from the IBARA language. But we don't really think the court needs to do that. I think there's an easier path for the court. In Zarate, this court found that the board reasonably determined that a reckless non-injurious endangerment crime fell within the generic definition of a crime of child abuse. And so necessarily, a crime like this one that is injurious and more serious than the one at issue in Zarate is also reasonably included within the crime of child abuse provision. So we think that this court implicitly has already deferred to the generic definition as including this type of conduct. In Provo City, the court said under Utah's Child Abuse Act, physical injury can include acts that imperil or threaten a child's health or welfare without an actual physical impact on the child. Why doesn't that go broader than the federal definition? Why would it fit within the federal definition? Well, we think it fits within, depending on how the court interprets Utah's law, we think it could fit within the injurious definition. And I just outlined that with the statutory language referring to physical injury and defining physical injury and requiring an injury or a condition that impairs the child's well-being. And also, if you look at the actual facts of those cases that interpret the fourth prong, while the child luckily didn't slip out of the defendant's hand, it was an instance where the defendant held a nine-month-old baby by its arms over a third-story balcony for several minutes. And while the baby luckily didn't fall, there was still that actual endangerment. It was so serious that it caused an injury, as the court has interpreted the definition of physical injury. So we think it meets that prong. But to perhaps- That addresses whether it fits under the Utah statute. But does that conduct fit under the federal definition? In other words, does maintaining a filthy house qualify as a child abuse offense under the federal statute? Sure. So the board's definition for injurious crimes requires the impairment of a child's physical or mental well-being. And so we think that these endangerment equals injury. I think Utah is unique. I think that it's one of the only statutes that defines- Sometimes we like to think that. That they define- But where did the Utah Court of Appeals say that the Utah statute extends to mental injury or mental well-being? Well, it did compare the definition of physical injury under the statute with the definition of serious physical injury. And it said that serious physical injury refers to emotional abuse and emotional harm. And so that supported interpreting physical injury as encompassing injuries that aren't necessarily physical. And so I think that in that way- But I think ultimately what Utah was doing was saying endangerment, actual real endangerment equals injury. And that satisfies the board's generic definition, which requires impairment to a child's well-being, whether physical or mental. Do you think those cases correctly interpreted the Utah statute? I think that we have strained ourselves to come up with a way of reconciling everything. But I think there is a way of reconciling it. That when the endangerment is so serious or real, it can be an injury to a child, regardless of whether the child catches a disease, for example, in a filthy home. But I would like to spend the last few minutes discussing our alternative argument, in case I haven't convinced your honor about Utah's interpretation of the fourth prime. So even if this court determines that Utah statute is really reaching endangerment types of crimes, non-injurious endangerment, this court has already deferred to the board's generic definition for that non-injurious endangerment crime that involves a reckless mental state. So we already have our generic definition under this court's precedent, which the court is bound by. And this statute meets the mental state requirement, because it requires a mental state of recklessness. And it also meets the requirement under Zerate that there be a sufficiently high risk of harm to a child. And the reason is, again, we don't have a lot of case law. Well, I just want to jump in there. On the Zerate, it says, as an element of the crime, a sufficiently high risk of harm to a child. Where in the Utah statute do we find the high risk element? Sure, your honor. So under the definition of physical injury, the state, as we've talked about, defines physical injury as any other condition which imperils the child's health or welfare. And so we can draw from that statutory definition, which is incorporated within the element of infliction of physical injury under the crime, that the state requires that the defendant imperils a child. And that language, which isn't qualified by, for example, may imperil, or potentially imperils, or possibly imperils, that language refers to actual imperilment, which the Utah court interpreted as endangerment. Actual endangerment, which is even higher than likelihood, which is usually the threshold for the high risk of injury to a child. And so we have the statutory language itself, which says which impairs. Then we also have some of the language in the state court decisions. So Provo indicates that the defendant does not challenge the trial court's finding that this conduct imperiled the child. It didn't say could imperil the child, or could have, or may have. They also say, they conclude that physical injury can include acts that imperil or threaten a child's health or welfare. PEEP, again, they conclude the filthiness of the home created a condition that endangered the health and welfare of the children who live there. So we think the statutory language, which says which imperils, and these state decisions that discuss that prong, they all use language that refer to an actual or real endangerment, which is a sufficiently high risk of harm to a child. This is also supported by some of the circuit court decisions. So, for example, Alma Saudi in the Eighth Circuit analyzed the Nebraska statute, and we do cite that decision in our brief. The Nebraska statute used similar language, placed in a situation that endangers. And the court found that that was sufficient. Nunez in the Third Circuit looked at a New Jersey statute, which used the language, which would impair. And would meant likely, so the court found that that was a sufficiently high risk of harm to a child. And I just want to address Petitioner- Before you leave that, can I just ask you one other thing? Yes, of course. In Ibarra, we said the Utah statute did not appear to criminalize child abuse unless the child was injured. How would you interpret the word injured in Ibarra? Is it limited to physical injury, or would it be broader than that? Well, I think that Ibarra has been now limited in Zarate. Zarate has explained that Ibarra was really only concerned with non-injurious endangerment crimes that required negligent mens rea. So I think we have some clarification that Ibarra was really just concerned with that minimal conduct is not reasonably falling within the definition of a crime of child abuse. But I do think that going back to the board's generic definition, injury refers to, and it's in the board's definition expressly, mental or physical well-being. It's not limited to physical. So it could be a mental injury. But that's distinct from the matter of sorum definition, which is non-injurious endangerment crime. In my remaining seconds, I just want to address petitioner's claim that Borden has an impact here. It doesn't. It was interpreting an entirely separate removability ground for a crime of violence. It uses distinct statutory language, and her position is entirely inconsistent with Zarate. Zarate precludes that argument as it has deferred to reckless endangerment as reasonably included within the definition. Thank you. Unless your honors have any other questions. Thank you. Thank you, counsel. Did you have any rebuttal time? All right. Case is submitted. Thank you, counsel, for your fine arguments. Thank you.